UNITED STATES FOR THE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

ESTHER MONIQUE SAVARESE,                    :

              Plaintiff,

           -against-                         :

CIRRUS DESIGN CORP., ET AL.,                :

              Defendants.         :

----------------------------------------------------------x

**REDACTED**
**: REPORT AND RECOMMENDATION**

09 Civ. 1911 (JGK)(KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Esther Savarese ("Savarese," "Esther Savarese" or "the plaintiff") commenced the above-

captioned action, in 2008, alleging Cirrus Design Corporation ("Cirrus"), and East End Aviation

("East End") (collectively, "the defendants"), were responsible for a plane crash, which resulted

in the death of Savarese's husband, Sergio Savarese ("Sergio Savarese").[1] Savarese proceeds

individually, and as the natural guardian and mother of ▮▮ and ▮▮, her minor children ("the

minor children").[2] Per the complaint, Savarese sought to recover damages for the wrongful death

of her husband. The parties have negotiated a disposition, through which the claims against

Cirrus and East End will be compromised and settled. They seek the court's approval of the

terms and conditions under which claims involving the infants will be resolved, as well as an

---

[1] Ballistic Recovery Systems, Inc. was also named a defendant; however, the plaintiff's claims against this entity were dismissed, without prejudice, in January 2009.

[2] In order to preserve the minor children's anonymity, privacy and security, the Court is identifying the minor children by using initials, and is filing a redacted version of this document with the Clerk of Court, for public viewing.

order awarding costs and reasonable attorneys' fees to counsel to the plaintiff.

## II. BACKGROUND

The instant claims arise from a fatal event, which occurred on September 15, 2006, when a Cirrus SR-20 aircraft crashed near Maybell, Colorado, in Moffat County, Colorado. At the scene of the crash, Sergio Savarese was pronounced dead. It is alleged that Cirrus "designed, manufactured, assembled, distributed, sold, inspected, tested, serviced, maintained and repaired" the SR-20 aircraft involved in the crash, and that East End "owned, maintained and operated the subject aircraft." It is alleged further that, the defendants' breach of their duty to exercise reasonable care and negligence caused the crash that ensued on September 15, 2006. More specifically, the plaintiff maintains that the Cirrus SR-20 aircraft, in which Savarese was flying, "departed controlled flight due to the improper design, manufacture and testing of the SR-20 aircraft, including but not limited to its dangerous handling, stall and spin characteristics." Furthermore, when the recovery system was employed, in an effort to respond to the aircraft's departure from "controlled flight," it failed to function properly, causing the aircraft to crash into the ground.

Savarese submitted an affidavit to the Court, dated September 17, 2009, in which she requested that the court approve the compromise and settlement of claims, that had been achieved via negotiations with the defendants. Through her affidavit, Savarese declares: (1) she is the surviving spouse of Sergio Savarese; (2) she resides with ▮ and ▮, in ▮▮▮▮▮, ▮▮ ▮▮, where she had also resided with the decedent; (3) Limited Letters Testamentary were issued to Savarese, by the ▮▮▮▮ Surrogate's Court, which authorize Savarese "to prosecute and settle claims arising from the wrongful death of Sergio Savarese"; and (4) Savarese

2

will apply for Letters of Guardianship of the person and property of ▮ and ▮ , "prior to filing her petition for allocation and distribution of proceeds." At the time of Sergio Savarese's death, Esther Savarese was 47.4 years of age; her anticipated years of dependency were 30.5. ▮ and ▮ were each ▮ years of age, with approximately ▮ years of anticipated dependency. Sergio Savarese was 48 years of age at his death; his anticipated life expectancy was 78.5 years.

In December 2006, Savarese hired the law firm Kreindler & Kreindler LLP ("Kreindler" or "the firm"), to investigate the plane crash, institute litigation and negotiate settlements. After commencing litigation in state court, in October 2008, this case was removed to the United States District Court for the Eastern District of New York and, in February 2009, transferred to this court. After the action was removed to federal court, negotiations commenced between Savarese and Cirrus. As a result, Cirrus and its insurer, Global Aerospace Insurance Company, made their final offer to settle Savarese's claims against Cirrus, in the amount of ▮ . Negotiations were also held among Savarese, East End and its insurance carrier, USAIG; and a final offer, in the amount of ▮ , was made to settle Savarese's claims against East End. Accordingly, the total amount of settlement funds is ▮ ("Settlement Amount"). In her affidavit, Savarese states that, in applying the formula provided in In re Kaiser's Estate, 198 Misc. 582, 100 N.Y.S. 2d 218 (N.Y. Sur. Ct. 1950), to the facts of this case, she is entitled to ▮ of the Settlement Amount, and ▮ and ▮ are each entitled to ▮ .[3]

Brian J. Alexander, Esq. ("Alexander"), counsel to the plaintiffs, submitted an affidavit, dated September 18, 2009, and a supplemental affidavit, dated October 15, 2009, detailing the

---

[3] In In re Kaiser's Estate, the distribution of a settlement to the decedent's spouse and next of kin was accomplished by dividing the net amount of settlement funds, based upon "the period they might reasonably have looked to decedent for support." In re Kaiser's Estate, 198 Misc. at 584, 100 N.Y.S.2d at 220.

3

legal services Kreindler rendered to the plaintiff and its fees. With regard to Kreindler's fees,
Alexander states that the law firm's fees and expenses were specified in the retainer agreement,
into which Kreindler and Savarese had entered. Alexander attached a copy of the retainer
agreement to his September 2009 affidavit. Pursuant to this agreement, Kreindler will receive,
out of the eventual recovery, "an amount equal to 30% of the net recovery (gross recovery less
costs and expenses of prosecuting the case), whether said settlement is achieved by suit,
settlement or otherwise." (Emphasis omitted). In addition, the retainer agreement provides that
Kreindler "assumes the responsibility to pay the fees of Loeb, Block & Partners LLP [("Loeb")]
in connection with this matter from the 30% of the net recovery it receives, and has entered into a
separate agreement with Loeb, Block & Partners LLP." (Emphasis omitted). The agreement
provides further that any costs and expenses incurred by Loeb would be deducted from the gross
recovery. As to costs and disbursements, the agreement provides that Kreindler "will advance all
necessary costs and disbursements (e.g., deposition costs; copy, fax, mailing and phone costs;
expert fees; etc.) the same to be returned to them out of the eventual recovery and deducted from
the gross recovery when said monies are received." A "summary of disbursements" is attached to
Alexander's September 19, 2009 affidavit, which lists items such as: "document," "westlaw,"
"travel, meals, petty cash & parking," "faxes," "postage," and "photocopy." The total expended
for these items is $7,973.06. Attached to Alexander's October 15, 2009 supplemental affidavit is
a more detailed itemization of disbursements; however, many of the descriptions on this more
detailed itemization remain vague, e.g., "Westlaw Communication," "Westlaw Connect,
"Westlaw Database,"⁴ "Faxes," "Postage," "FedEx," "Photocopying," and "Telephone Charges."

---

⁴The Court notes that expenses for electronic research are not recoverable as costs. See United
(continued...)

4

In his September 19, 2009 affidavit, Alexander states that the 30% contingency fee provided for in the retainer agreement, as attorneys' fees, was reduced to 28% of the total net recovery.

On December 17, 2009, an infant compromise hearing was held. Savarese testified at the hearing that she is the natural mother of the minor children and that she was involved intimately with her husband's business. She also explained her understanding of the parties' proposed settlement. At the hearing, the Court questioned Alexander, about the legal services he rendered in connection with this matter. The Court inquired whether Alexander kept contemporaneous time records, in support of his request for attorneys' fees. Alexander responded that he did not keep contemporaneous time records for contingency fee cases. The Court also inquired why the contingency fee originally agreed upon by Savarese and Kreindler–a fee of 30% of the net recovery–was reduced to 28% of the net recovery. Alexander informed the Court that he reduced the fee based upon his relationship with the Loeb law firm. He noted that Kreindler had worked on a matter arising out of an aviation tragedy involving a Loeb partner's relative. In addition, Alexander explained that Savarese had a previous relationship with Loeb.

During the hearing, Alexander stated that a supplemental writing would be submitted to the Court providing details about how the funds allocated to ▮▮ and ▮▮ would be maintained. In a "second and supplemental petition for approval of wrongful death compromise settlement," dated December 29, 2009, Esther Savarese indicated her desire to place the minor children's settlement funds in an "interest bearing savings account[s] and thereafter invest [each child's settlement funds] [in] an FDIC insured certificate of deposit, at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

⁴(...continued)
States of America, for the Use and Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir. 1996).

██████████████████." According to Savarese, the funds going to the minor children are "solely for said minors' benefit and no funds or interest may be withdrawn without further Court approval," until both minor children reach the age of 18 years, at which point, "upon presentation of proper proof," to ████████████████ and ██ can "demand all monies held in the account[s]."

## III. DISCUSSION

In this judicial district, a proposed settlement involving a claim made by an infant must be reviewed by a judicial officer, who must determine whether: (1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable. See Local Civil R. 83.2(a); New York Judiciary Law ("NY Jud. Law") § 474; New York Civil Practice Law and Rules ("CPLR") §§ 1205-08. Specifically, a court must evaluate whether the proposed settlement is "fair and reasonable and in the infant plaintiff's best interests." Edionwe v. Hussain, 7 A.D.3d 751, 753, 777 N.Y.S.2d 520, 522 (App. Div. 2d Dep't 2004); see also Doe v. Mattingly, No. 06 CV 5761, 2007 WL 2362888, at *1-2 (E.D.N.Y. Aug. 14, 2007) (quoting Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 654 [2d Cir. 1999]) (a court must determine whether a proposed settlement is "'fair, reasonable and adequate, by comparing the terms of the compromise with the likely rewards of litigation'"). In doing so, a court must "'form an educated estimate of the complexity, expense, and likely duration of such litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.'" Newman v. Stein, 464 F.2d 689, 692 (2d Cir. 1972) (citation omitted), cert. denied, 409 U.S. 1039, 93 S. Ct. 521 (1972); see also Allen v. Robert's American Gourmet Food, Inc., No. 07-CV-2661, 2009 WL 2951980, at *10 (E.D.N.Y. Sept. 8, 2009) (listing various

6

factors a court should consider in assessing a proposal to compromise an infant's claim).

Prior to convening the infant compromise hearing, the Court received an affidavit by Esther Savarese, in her individual capacity, and in her capacity as the "natural guardian" of █████ and ███, as well as an affidavit by her attorney, in support of the proposed settlement's terms and conditions. See CPLR § 1208(a)-(c). At the infant compromise hearing, and in the supporting papers described above, the parties contemplated a Settlement Amount of ████████, to be distributed as follows: (1) █████████ to Kreindler, for attorney's fees; (2) $7,973.06 to Kreindler, for attorney disbursements; (3) ████████, or ████ of the Settlement Amount – less attorneys' fees and disbursements – to Esther Monique Savarese, as parent and custodian of minor child, ███, to be invested in an interest bearing savings account and, thereafter, invested in an FDIC insured certificate of deposit, at ████████████████████████; (4) ████████, or ████ of the Settlement Amount – less attorneys' fees and disbursements – to Esther Monique Savarese, as parent and custodian of minor child, ███, to be invested in an interest bearing savings account and, thereafter, invested in an FDIC insured certificate of deposit, at ████████████████████; and (5) the remainder, ████████, or ████ of the Settlement Amount – less attorneys' fees and disbursements – to Savarese.

Attorney Compensation

In considering the reasonableness of the requested attorneys' fees to be deducted from the proposed settlement amount for an infant plaintiff's compromised claim, a court may consider the "skill, diligence, and expertise" required to examine the issues raised in the action and the time and labor involved in litigating the case. White v. DaimlerChrysler Corp., 57 A.D.3d 531, 535, 871 N.Y.S.2d 170, 174 (App. Div. 2d Dep't 2008). The Court has done that here.

In addition, the United States Supreme Court has stated that "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983). As noted above, during the infant compromise hearing, Alexander informed the Court that he does not keep contemporaneous time records reflecting the hours expended, for the legal services rendered, in contingency fee cases, such as the instant case; thus, no records could be provided to the Court.

Prior to the December 2009 hearing, Alexander submitted, to the Court, a copy of the contingency fee agreement between Kreindler and Savarese. At the infant compromise hearing, and in documents submitted to the Court, Alexander reported that the contingency fee set forth in the written agreement–30% of the net recovery–was reduced to 28% of the net recovery. In addition, Alexander has represented to the Court that Loeb "assisted" Kreindler, and Loeb's "fees and expenses are included" in the 28% of the net recovery allocated to Kreindler. During the infant compromise hearing, Alexander described the work performed by Loeb as including serving as a "sounding board for each step of our analysis of our liability and damages information." Alexander explained that, "most of the times [Alexander] spoke with Mrs. Savarese, she would have a subsequent conversation with the lawyers from Loeb Block to kind of go over those things again, or at least did from time to time." Alexander explained further that, with respect to damages, Loeb "took a leading role with [Kreindler] to develop the damages in the case," including "gathering critical documents" such as "tax returns," and "giving a whole thumbnail sketch of how the [Savarese's] company is operated, and what the future might look like for the company," and "things of that nature, which were critical to presenting . . . potential economic damage going forward." In addition, Alexander noted that Loeb was not present at the

8

settlement negotiations; however, Kreindler and Savarese, discussed the settlement negotiations with Loeb. A copy of the fee agreement between Kreindler and Loeb was not provided to the Court.

An attorney for a minor child must establish that a proposed settlement for the minor is fair and reasonable, and that includes, necessarily, any proposed attorney compensation. See CPLR § 1208(b); NY Jud. Law § 474. "'[T]he burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept the court should not award the full amount requested.'" Monaghan v. SZS 33 Assocs., L.P., 154 F.R.D. 78, 83-84 (S.D.N.Y. 1994) (quoting F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1265 [2d Cir. 1987]). This is so even in a circumstance where, like here, the mother of the minor children has agreed to the amount requested for legal fees and costs, since such an agreement, when made by guardians, is advisory only. It remains the fact that a court must determine and fix the amount of the attorney's fee. See, e.g., Werner v. Levine, 52 Misc.2d 653, 654-55, 276 N.Y.S.2d 269, 271 (1967) (finding, in a case involving the compromise and settlement of an infant's claim, "the amount of the [contingency] fee must be fixed by the court and any agreement of the guardian is advisory only").

In order to determine whether a proposed attorney fee is reasonable, a court should evaluate "'what a reasonable paying client would be willing to pay' for the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked." Moreno v. Empire City Subway Co., No. 05 Civ. 7768, 2008 WL 793605, at *2 (S.D.N.Y. Mar. 26, 2008) (citing Torres v. City of New York, No. 07 Civ. 3473,

9

2008 WL 419306, at *1 [S.D.N.Y. Feb. 14, 2008]) (quoting Arbor Hill Concerned Citizens

Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 112 [2d Cir. 2007]). When records

providing, at a minimum, detailed descriptions of the litigation-related tasks performed, the legal

personnel involved, as well as the dates and hours worked are absent, the Court can neither assess

the reasonableness of proposed attorney fees accurately, nor determine what a reasonable client

might be willing to pay.  See Cruz v. Local Union No. 3 of Int'l Bhd. of Electrical Workers, 34

F.3d 1148, 1160 (2d Cir. 1994) (citing DiFilippo v. Morizio, 759 F.2d 231, 235 [2d Cir. 1985]).

       While an attorney who represents a client on a contingency fee basis may not maintain

contemporaneous time records, the absence of such records frustrates a court in its effort to

evaluate the fairness and reasonableness of a proposed settlement, including legal fees, when an

infant's claim is compromised.  See Monaghan, supra.  In such a circumstance, reducing the

amount sought for attorneys' fees is appropriate.  See id.  Counsel to the plaintiff seeks 28% of

the net recovery, as the contingency fee; that results in a fee of ▮▮▮▮▮▮▮▮.  Since

contemporaneous time records have not been supplied to the Court, no accurate determination

can be made by the Court, on the appropriateness of the amount of time expended by counsel on

particular litigation tasks, and the Court is unable to evaluate properly whether the settlement

proposed is reasonable and serves the minor children's best interests.  Consequently, the Court

finds that it would be reasonable and appropriate to reduce the proposed 28%, of net recovery,

contingency fee.

       In addition, the record indicates that Loeb is to receive a portion of the fees obtained by

Kreindler.  However, a copy of the fee agreement between these law firms has not been provided

to the Court.  Moreover, no information has been provided to the Court concerning the sum, or

10

percentage of the contingency fee, to be allocated to Loeb. The work performed by Loeb, as described by Alexander, at the infant compromise hearing, included: (a) acting as a "sounding board," in analyzing liability and damages; (b) accepting telephone calls from Savarese to "go over" information she had discussed already with Kreindler; (c) gathering "critical documents," such as tax returns; (d) providing information on Savarese's business operations; and (e) discussing settlement negotiations with Kreindler and Savarese.

"It has been well established by the New York courts that an agreement between attorneys for division of a legal fee is valid and is enforceable in accordance with the terms set forth in the agreement, provided that the attorney who seeks his share of the fee contributed some work, labor or service toward the earning of the fee." Stissi v. Interstate & Ocean Transport Co. of Philadelphia, 814 F.2d 848, 851 (2d Cir. 1987) (emphasis in original) (quotation marks and citations omitted). In the case at bar, the Court is unable to review the "terms set forth in the agreement" between Kreindler and Loeb, since no copy of the agreement was submitted to the Court. Furthermore, no contemporaneous time records, for the work performed by Loeb, were provided to the Court. See Monaghan, supra. Moreover, "the need for [the work done]" by Loeb, is not apparent to the Court, as the tasks performed by Loeb, as described by Alexander, seem to have been duplicative (e.g., accepting telephone calls from Savarese to discuss matters she had discussed already with Kreindler) and unnecessary (e.g., obtaining documents such as tax returns, which Savarese likely had in her possession, or describing to Kreindler how the Savareses' business operated, a business in which Esther Savarese participated significantly). Under these circumstances, awarding attorney's fees to Loeb is not appropriate. See id. ("'[T]he burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records

have not been kept the court should not award the full amount requested.'") (quoting F.H. Krear & Co., 810 F.2d at 1265).

Due to the lack of documentation provided by Kreindler, to enable the Court to analyze the reasonableness of the legal fees requested, and the lack of information and documentation supporting the division of Kreindler's legal fee with Loeb, a reduction in Kreindler's proposed 28% contingency fee – in which Loeb was to share – by 40% is warranted. This results in an award of ▮▮▮▮▮▮, for attorney's fees; no part of which award should be allocated to Loeb.

## Recovery of Disbursements

As noted above, counsel to the plaintiff submitted an affidavit to the Court which included a "summary of disbursements," and a subsequent affidavit that included an "itemization of disbursements," made by counsel, in prosecuting this action, on behalf of the plaintiff. However, no invoices, receipts or other corroborating data, documenting the disbursements, were provided.

The summary of disbursements submitted by Alexander provides an insufficient basis upon which the Court may rely in evaluating the reasonableness of the disbursements, or the lone cost item ("court costs") reflected in the submissions. Local Civil Rule 54.1, of this court, which explains how requests to tax costs are typically handled, requires that "[t]he bill of costs shall include an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred. Bills for the claimed costs shall be attached as exhibits." Local Civ. R. 54.1(a). Where an attorney fails to provide suitable documentation to substantiate the costs incurred, a court may decline to award any costs. See Lide v. Abbott House, No. 05 Civ. 3790, 2008 WL 495304, at *2 (S.D.N.Y. Feb. 25, 2008). Accordingly, granting the request for an order that costs for "case expenses" be recovered, in the circumstance of the instant case, is

12

unjustifiable.

## Investment and Maintenance of Minors' Funds

As noted above, when reviewing a proposed settlement, involving the claims of minor children, a court must determine whether the best interests of the minor children are protected by the terms and conditions of the proposed settlement. See Local Civil R. 83.2(a); NY Jud. Law § 474; CPLR §§ 1205-08. The proposed settlement provides that the Settlement Amount allocated to each minor child will be deposited in an interest-bearing savings account and, thereafter, in an FDIC-insured certificate of deposit. Each minor child can access these funds upon attaining 18 years of age. No specific information has been provided to the Court demonstrating that the investment vehicles Savarese selected for the minor children's funds will maximize the yield when the funds are made available to the minor children, at majority. It is presumed that the settlement funds will be invested so as to yield a competitive rate of interest, while ensuring that the settlement funds are safeguarded until the minor children reach the age of majority. The Court is mindful that Savarese testified, at the infant compromise hearing, that she believed she was acting in the best interests of her children. Nothing in the record suggests otherwise; accordingly, no basis exists for the Court to reject Savarese's chosen investment vehicles. See Stahl v. Rhee, 220 A.D.2d 39, 46, 643 N.Y.S.2d 148, 153 (App. Div. 2d Dep't 1996) (noting that, "[i]n a case where reasonable minds may legitimately differ, the judgment of the infant's natural guardian should prevail").

Based on the record, as a whole, the Court finds the terms and conditions under which the minor children's claims will be compromised and settled, as proposed by the parties, are fair, reasonable and in the best interests of the minor children. However, to address deficiencies in the

13



plaintiff's submissions, respecting attorneys' fees, disbursements and costs, a reallocation of the Settlement Amount is warranted, as described above: (1) ▮▮▮▮ to Kreindler, counsel to the plaintiff, as suitable compensation for the legal services rendered to the plaintiff[5];

(2) ▮▮▮▮ to ▮▮, ▮▮ of the Settlement Amount after deducting attorney's fees;

(3) ▮▮▮▮ to ▮▮, ▮▮ of the Settlement Amount after deducting attorney's fees; and

(4) ▮▮▮ to Savarese, ▮▮ of the Settlement Amount after deducting attorney's fees.

## IV.  RECOMMENDATION

It is recommended that the terms and conditions of the proposed settlement be approved, under the following conditions:

1) Savarese should be authorized and empowered, in the interest of the minor children, ▮▮, born on ▮▮▮▮, and ▮, born on ▮▮▮▮, to settle and compromise the minor children's claims, as described and set forth in this litigation, and the claim Savarese brought as an individual, resulting in a lump sum settlement payment, by the defendants, of ▮▮▮▮ ▮▮▮ exactly (▮▮▮), with Cirrus Design Corporation paying ▮▮▮ ▮▮▮ exactly (▮▮▮) and East End Aviation, LLC, paying ▮ ▮▮▮ exactly (▮▮▮), in full satisfaction of all claims for damages, attorneys' fees and interest;

2) the sum of ▮▮▮▮▮▮▮ exactly (▮▮▮), should be deducted from the Settlement Amount and paid by the defendants, to Kreindler, as reimbursement for attorney's fees. No award should be made for disbursements and costs incurred by Kreindler; and no portion of the attorney's fees awarded should be allocated to

---

[5] The amount designated to compensate Kreindler, for its legal services, is exclusive of costs and disbursements, since no award for costs and disbursements is appropriate.

14

Loeb.



3) the sum of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉ exactly (▉▉▉▉▉▉) should be paid by the defendants to ESTHER

SAVARESE, AS PARENT AND CUSTODIAN OF THE INFANT, ▉▉, to the credit and benefit

of ▉▉;

4) the sum of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉ exactly (▉▉▉▉▉▉) should be paid by the defendants to ESTHER

SAVARESE, AS PARENT AND CUSTODIAN OF THE INFANT, ▉▉, to the credit and

benefit of ▉▉; and

5) the sum of ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉ exactly (▉▉▉▉▉▉) should be paid by the defendants to Savarese.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the

parties shall have fourteen (14) days from service of this Report to file written objections. See also,

Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of

Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl, 40 Centre

Street, Room 1030, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre

Street, Room 540, New York, New York, 10007. Any requests for an extension of time for filing

objections must be directed to Judge Koeltl. FAILURE TO FILE OBJECTIONS WITHIN

FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO

Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300

(2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson,</u>

714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York                                    Respectfully Submitted,
      February 8, 2010

                                                    _Kevin Nathaniel Fox_

                                                 KEVIN NATHANIEL FOX
                                                 UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Brian J. Alexander, Esq.
Oliver Beiersdorf, Esq.
John O. Brennan, Esq.

16